In re L & J ANAHEIM ASSOCIATES, Debtor.

L & J ANAHEIM ASSOCIATES, Plaintiff–Appellant,

v.

KAWASAKI LEASING INTERNATIONAL, INC., Defendant–Appellee.

No. 92–55435.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 1993.

Decided June 17, 1993.

Richard M. Moneymaker, Moneymaker & Kelley, Los Angeles, CA, for plaintiff-appellant.

Dane L. Miller, Marks & Murase, Los Angeles, CA, for defendant-appellee.

Before: WALLACE, Chief Judge; O'SCANNLAIN and FERNANDEZ, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We consider whether a creditor whose legal rights would be changed under a Chapter 11 plan is "impaired" under the plan as that term is defined by the Bankruptcy Code.

I

L & J Anaheim Associates ("L & J"), a limited partnership, owned a single piece of real property, a hotel. Kawasaki Leasing International, Inc. ("Kawasaki") held a security interest in the hotel as collateral to secure a $13.2 million non-recourse note. Due to alleged mismanagement by the company hired to operate the hotel ("Trusthouse"), L & J's income declined to the point where it defaulted on its note to Kawasaki. Kawasaki moved to foreclose, and L & J filed for bankruptcy protection under Chapter 11.

When L & J failed to propose a plan of reorganization during the 120–day exclusivity period provided by section 1121(b),[1] Kawasaki filed the plan that is the subject of this litigation ("the Plan"). The Plan proposed to auction off L & J's assets—namely, the hotel itself and a lawsuit brought against Trusthouse for its alleged mismanagement—and to use the proceeds to pay off all outstanding liens in order of their priority. The Plan also contemplated that Kawasaki would be appointed as Estate Representative, with all the powers of a bankruptcy trustee, in order to bring lawsuits against L & J's general partners, and so to pay any remaining claims against the partnership.

A hearing was held to determine whether the Plan should be confirmed. The bankruptcy court disallowed certain claims, and disqualified certain creditors that had voted for the Plan. Of those creditors that remained eligible to vote, only Kawasaki voted in favor of the Plan. The bankruptcy court, however, ordered the Plan confirmed pursuant to the Code's "cramdown" provisions. *See* 11 U.S.C. § 1129(b). L & J appealed to the district court, which affirmed the order of confirmation. This appeal follows.

---

1. All citations are to the Bankruptcy Code, Title 11, United States Code, unless otherwise noted.

## II

The question before us is whether the bankruptcy court erred in permitting Kawasaki to "cram down" the dissenting creditors and in confirming the Plan. Under section 1129(a)(8) of the Code, a Chapter 11 plan of reorganization generally may not be confirmed if any impaired class of creditors votes to reject the plan. 11 U.S.C. § 1129(a)(8). There is, however, an exception to this general rule:

> [I]f all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1129(b)(1). This provision permits a plan to be "crammed down" over the objection of dissenting creditor classes, subject to the bankruptcy court's determination that the plan treats those classes fairly.

As noted, however, cramdown is only possible where the requirements of section 1129(a) have been met. Among these is the requirement that, "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan...." 11 U.S.C. § 1129(a)(10). The Plan proposed by Kawasaki did leave certain creditor classes impaired. Thus, a favorable vote by at least one impaired class was necessary before the bankruptcy court could allow Kawasaki to cram down the Plan over the dissenting creditors.

The bankruptcy court ruled that Kawasaki itself was an impaired creditor under the Plan it had proposed. Since Kawasaki's claim was placed alone in Class One under the Plan, Kawasaki's "yes" vote on the Plan meant that one class of creditors stood in favor of the Plan, satisfying the requirement of section 1129(a)(10). On finding that all the other requirements of subsection (a) had been met, and that the Plan did not discriminate unfairly, the bankruptcy court was required to confirm the Plan under section 1129.

## III

On appeal, L & J contends that Kawasaki's legal rights were improved under the Plan it proposed, and that it therefore was not an impaired creditor within the meaning of section 1124 of the Bankruptcy Code. As a consequence, L & J maintains, no impaired class voted in favor of the Plan, and cramdown under section 1129(b) should have been unavailable. Whether a claim is impaired under section 1124 is a question of law, subject to de novo review. *In re Acequia, Inc.,* 787 F.2d 1352, 1357–58 (9th Cir. 1986).

In relevant part, section 1124 provides that "a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan ... leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(1). It is well established that, with this language, "Congress define[d] impairment in the broadest possible terms." *In re Madison Hotel Associates,* 749 F.2d 410, 418 (7th Cir.1984) (quoting *In re Taddeo,* 685 F.2d 24, 28 (2d Cir. 1982)). Indeed, we ourselves have suggested that under this broad definition, "any alteration of the rights constitutes impairment even if the value of the rights is enhanced." *In re Acequia,* 787 F.2d at 1363 (dictum) (quoting 5 *Collier on Bankruptcy* ¶ 1124.03, at 1124–13 (15th ed. 1985)). *See In re Barrington Oaks General Partnership,* 15 B.R. 952, 962 (Bankr.D.Utah 1981) (Mabey, J.) (quoting same section of *Collier* ); *see also In re Club Associates,* 107 B.R. 385, 401 (Bankr. N.D.Ga.1989) ("Any alteration in a creditor's legal rights or privileges constitutes impairment."); *In re Elijah,* 41 B.R. 348, 350 (Bankr.W.D.Mo.1984) ("Alteration is synonymous with impairment.").

At first blush the idea that an improvement in one's position as a creditor might constitute "impairment" seems nonsensical. It must be recognized, however, that "impairment" is a term of art adopted

by Congress to replace the old "material and adverse effect" standard of the Bankruptcy Act. *See* former 11 U.S.C. § 507 (repealed 1979). Under the old standard, a creditor was entitled to vote on a proposed plan only if it was negatively affected by the plan. This inevitably fostered uncertainty, and invited litigation over whether the value of a creditor's interest would be diminished by a plan. Section 1124 of the Code was enacted to do away with these problems. "By driving a wedge between the concept of impairment and the vagaries of value, parties may know with greater certainty, whether or not they are impaired. This certainty should reduce litigation and aid negotiation toward a plan, the goals which Section 1124 was established to further." *Barrington Oaks*, 15 B.R. at 963.

In any event, the plain language of section 1124 says that a creditor's claim is "impaired" unless its rights are left "unaltered" by the Plan. There is no suggestion here that only alterations of a particular kind or degree can constitute impairment. The narrow question that thus arises is whether Kawasaki's "legal, equitable, [or] contractual rights" were changed by the Plan; if so, its claim was impaired.[2]

### IV

█ Kawasaki argues that its rights were altered under the Plan in a number of different ways. We agree with one of these arguments, and therefore need not address the others.

Under the loan agreements executed by the parties, Kawasaki was privileged to exercise "all rights and remedies" available to a secured party under the California Uniform Commercial Code once L & J defaulted on its repayment obligations. This was a contractual right for which Kawasaki bargained in exchange for extending financing to L & J. The Plan did away with this right—it left Kawasaki no opportunity to invoke the substantive remedies or procedural mechanisms available to it at state law. Instead, the Plan required that Kawasaki's collateral (the hotel and the lawsuit) be sold at public auction under procedures mandated by federal bankruptcy law. The Plan thus altered Kawasaki's prepetition contract rights, leaving it impaired within the meaning of the Code. *See In re Distrigas Corp.*, 66 B.R. 382, 384 (Bankr.D.Mass.1986) (claim deemed impaired under plan providing for rejection of contract and resolution of damages under provisions of Bankruptcy Code because it deprived creditor of contractually guaranteed right to arbitrate all contract disputes). As our analysis above makes clear, we have no occasion to ask whether Kawasaki's rights were effectively enhanced or diminished under the Plan; our inquiry ends with the conclusion that those rights were changed.

### V

Since Kawasaki's rights were altered under the Plan, the requirement of section 1129(a)(10) that at least one impaired creditor class vote in favor of the Plan was met. The bankruptcy court thus committed no error in confirming the Plan via cramdown under section 1129(b). The judgment of the district court affirming the order of confirmation is therefore

AFFIRMED.

█

---

2. L & J, citing no authority, contends that the general rule should not apply where it is used abusively, as where the plan proponent enhances its own position, then attempts to use this fact to show impairment and so cram down the rest of the creditors. We believe, however, that abuses on the part of a plan proponent ought not affect the application of Congress's definition of impairment. The bankruptcy court can and should address such abuses by denying confirmation on the grounds that the plan has not been "proposed in good faith." 11 U.S.C. § 1129(a)(3).

L & J does in fact argue that Kawasaki acted in bad faith, gerrymandering the Plan "solely to create an impaired class to vote in favor of the Plan and thus 'cram down' the other impaired classes." *See In re Club Associates*, 107 B.R. 385, 401 (Bankr.N.D.Ga.1989) ("An alteration which is clearly intended only to create an impaired class to vote in favor of a plan so that a debtor can effectuate a cramdown ... will not be allowed."). The bankruptcy court, however, found that Kawasaki's proposal satisfied the good faith requirement, a finding that is not clearly erroneous.