**CONTINENTAL SECURITIES CORP., Appellant,**

v.

**SHENANDOAH NURSING HOME PARTNERSHIP, Appellee.**

**Civil Action No. 95–0081–H.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

March 8, 1996.

Augustus Charles Epps, Jr., Christian, Barton, Epps, Brent & Chappell, Richmond, VA, for appellant.

William E. Shmidheiser, III, Wharton, Aldhizer & Weaver, PLC, Harrisonburg, VA, J. Christopher Kohn, Brendan Collins, U.S. Department of Justice, Commercial Litigation Branch, Civil Div., Washington, DC, Bruce Wiener, Office of General Counsel, Dept. of Housing & Urban Development, Washington, DC, for appellee.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter is before the court upon appeal by Continental Securities Corp. ("Conti-

nental") of an order of the bankruptcy court confirming Shenandoah Nursing Home Partnership's ("Shenandoah") Second Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* The United States Department of Housing and Urban Development ("H.U.D."), by leave of the court, has filed a brief in support of the interests of the United States with respect to this appeal. 28 U.S.C. § 517.

This case was previously before the court upon Continental's August 3, 1995 motion for a stay pending appeal of the bankruptcy court's order confirming the Plan. The court ultimately denied Continental's motion, by written opinion, on September 11, 1995. The case now returns to this court to address the merits of Continental's appeal. Appellate jurisdiction is vested by 28 U.S.C. § 158(a).

## I.

The facts governing Continental's appeal have not materially changed since the court denied Continental's motion for a stay pending appeal. The court, therefore, borrows from its prior recitation of the facts underlying this case. *See Continental Securities Corp. v. Shenandoah Nursing Home Partnership,* 188 B.R. 205, 207–208 (W.D.Va.1995) (hereinafter *"Continental I "*).

On December 12, 1990, Shenandoah, the debtor in this case, and Continental, the creditor, executed a Deed of Trust Note ("Note") in the amount of $2,339,900. The Note bears interest at 11.125% per annum through the date of Final Endorsement and thereafter at the rate of 11% per annum on the unpaid balance until paid. The indebtedness is secured by a Deed of Trust lien on the actual property comprising the nursing home. Shenandoah's obligations under the Note are insured by the Department of Housing and Urban Development. The Note contains a so-called "lockout" provision that prohibits prepayment of the Note prior to December 1, 2001. However, unlike many similar instruments containing lockout provisions, the Note does not contain a penalty provision enforcing the lockout provision.

On July 1, 1994, Shenandoah filed a voluntary petition in Bankruptcy Court under Chapter 11 of the Bankruptcy Code. The Second Amended Plan of Reorganization ("Plan"), confirmed by the bankruptcy court on July 31, 1995, provides that "the allowed secured claim of Continental shall be accelerated and all principal and interest accrued as of the Confirmation Date shall be paid in full ten (10) days after the Confirmation Date." *Record,* Vol. 1, Tab 8 at ¶ 4.2.[1] Thus, the Plan allows Shenandoah to prepay the Note in violation of the terms of the lockout provision. Moreover, the Plan does not provide Continental with damages for Shenandoah's prepayment. Continental moved the bankruptcy court to reconsider the Plan, or alternatively, for a stay pending appeal of the Confirmation Order, arguing that the Plan could not be confirmed as a matter of law. In a written order entered on August 3, 1995, the bankruptcy court denied Continental's motion. It is from this August 3, 1995 order denying Continental's motion for reconsideration, as well as from the bankruptcy court's July 31, 1995 order confirming the Plan, that Continental now appeals. For the reasons stated herein, the court affirms.

## II.

■ Continental argues that the bankruptcy court erred in confirming the Plan because the Plan is not confirmable as a matter of law under § 1129 of the Bankruptcy Code.[2] While Continental makes several ar-

---

**1.** "Confirmation Date" is defined by the Plan as "that date on which the order of the Bankruptcy Court confirming the Plan becomes a Final Order." *Record,* Vol. 1, Tab 8 at ¶ 2.11. "Final Order", in turn, is defined as "an order of the Bankruptcy Court which shall not have been reversed, stayed, modified or amended and as to which the time for appeal or to seek review or rehearing shall have expired, as a result of which, such order shall become final in accordance with Rule 8002 of the Bankruptcy Rules of Practice and Procedure." *Id.* at ¶ 2.18.

**2.** Section 1129 provides in pertinent part as follows:

**Confirmation of Plan.**

(a) The court shall confirm a plan only if all of the following requirements are met:

guments on appeal,[3] it presses two primary objections.[4] First, Continental argues that the bankruptcy court erred by not affording Continental a prepayment premium in lieu of enforcing the Note's lockout provision.[5] By failing to do so, Continental argues, the

(1) The plan complies with the applicable provisions of this title.

\*     \*     \*     \*     \*     \*

(3) The Plan has been proposed in good faith and not by any means forbidden by law.

\*     \*     \*     \*     \*     \*

(7) With respect to each impaired class of claims or interests—
(A) each holder of a claim or interest of such class—
(i) has accepted the plan; or
(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date;

\*     \*     \*     \*     \*     \*

(8) With respect to each class of claims or interests—
(A) such class has accepted the plan; or
(B) such class is not impaired under the plan.

\*     \*     \*     \*     \*     \*

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

\*     \*     \*     \*     \*     \*

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.
(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
(A) With respect to a class of secured claims, the plan provides—
(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
(iii) for the realization by such holders of the indubitable equivalent of such claims.

3. Specifically, Continental argues that confirmation of the Plan violates the following statutory provisions: section 1129(a)(1) because the Plan improperly classified Continental's claim as unimpaired; § 1129(a)(3) because prepayment of the Note violates federal law; § 1129(a)(7) because Continental, as an impaired creditor, rejected the Plan and did not receive what it would have received had Shenandoah filed its petition under Chapter 7; § 1129(a)(8) because Continental, as an impaired creditor, rejected the Plan; § 1129(a)(10) because no impaired creditor voted in favor of the Plan; § 1129(b)(1) because the Plan discriminates unfairly against Continental; § 1129(b)(2)(A)(i) and (iii) because Continental is not receiving, under the Plan, payments equal to the value of its interest in the nursing home property, nor is it receiving the indubitable equivalent of its claims, in light of the prohibition against prepayment.

4. As the court noted previously, all of Continental's arguments stem from two primary contentions. *Continental I*, 188 B.R. at 211–12.

5. Continental has also suggested that the bankruptcy court, as a legal matter, did not have authority to relieve Shenandoah of its obligations under the lockout provision. However, Continental conceded at the confirmation hearing before the bankruptcy court that the court did have authority to allow Shenandoah to prepay the Note. *Record*, Vol. 3 at 115 (counsel for Continental stating, "I have conceded to this court and I will continue to concede to this court that I believe a Chapter Eleven court has the ability … to rewrite the parties' contract"). Continental limited its argument before the bankruptcy court to whether that court should require Shenandoah to pay a penalty for its prepayment of the Note. Moreover, counsel for Continental acknowledged at oral argument before this court that 11 U.S.C. § 105 provides the bankruptcy court with robust, although not unfettered, equitable powers. *See also Continental I*, 188 B.R. at 214–15 (noting the formidable equitable powers of the bankruptcy court). Thus, the thrust of Continental's impairment argument, as stated above, is that the bankruptcy court, in return for relieving Shenandoah from the strictures of the prepayment prohibition, should have provided Continental with some sort of financial salve.

bankruptcy court altered Continental's contractual rights under the Note, thereby rendering its claim "impaired" under 11 U.S.C. § 1124. Accordingly, Continental maintains, the bankruptcy court could not confirm the Plan since Continental, as an impaired creditor, did not vote in favor of it. 11 U.S.C. §§ 1129(a)(7), (8). Second, Continental argues that the bankruptcy court erred in confirming the Plan because the Plan was not proposed in good faith. 11 U.S.C. § 1129(a)(3). The court's analysis below will focus on these two arguments.

### A.

### 1.

Continental argues that by vitiating the lockout provision, and by failing to provide Continental with a prepayment premium in compensation, the bankruptcy court dramatically altered Continental's legal rights under the Note. Indeed, Continental argues that it became an "impaired" creditor under § 1124 and that as such, the Plan cannot be confirmed over Continental's objection. *See* 11 U.S.C. §§ 1129(a)(7), (8).

Section 1124 provides as follows:

[A] class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest[; or]

\*   \*   \*   \*   \*   \*

(3) provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to—

(A) with respect to a claim, the allowed amount of such claim.

11 U.S.C. § 1124.

Continental argues that its claim is impaired under subsection (1) because the bankruptcy court, in essence, re-wrote the terms of the Note, stripping Continental, without compensation, of the lost income stream generated by the Note as originally drafted. For support, Continental and

H.U.D. cite several cases for the proposition that any alteration of a creditor's rights renders that creditor impaired under § 1124(1). *See, e.g., In re L & J Anaheim Assoc.,* 995 F.2d 940 (9th Cir.1993) (any alteration of rights constitutes impairment); *In re Union Meeting Partners,* 160 B.R. 757, 771 (Bkrtcy. E.D.Pa.1993) ("Impairment is a term of art and includes virtually any alteration of a claimant's rights").

The court agrees that Shenandoah's Plan alters Continental's contractual rights under the Note. However, as the bankruptcy court noted, since the "possible exclusions [under § 1124] are listed with the conjunction 'or,' if only one is satisfied, the class is unimpaired." *Record,* Vol. 2, Tab 1 at 8. Thus, Continental remains unimpaired if the requirements of subsection (3) are met—that is, if the Plan provides Continental with the allowed amount of its claim.[6]

The bankruptcy court relied on 11 U.S.C. § 506(b) in holding that Continental was not impaired under subsection (3). Section 506(b) provides that oversecured creditors, like Continental, are entitled only to "interest on [the oversecured] claim, and any reasonable fees, costs, or charges *provided for under the agreement* under which such claim arose." 11 U.S.C. § 506(b) (emphasis supplied). The *bankruptcy court held that this* language expressly prohibited it from including, as part of Continental's secured claim, damages stemming from the violation of a lockout provision since the instrument did not contain a damages provision. Specifically, the bankruptcy court held that "[w]hile there is a prepayment prohibition, which is not enforceable in this context, there is no prepayment penalty provision provided for anywhere in the contract. Therefore, there can be no prepayment fees, costs, or charges allowed under the confirmed Plan as none are provided for in the note under § 506(b)." *Record,* Vol. 2, Tab 1 at 10.

■ Thus, the bankruptcy court held that Continental's secured claim consisted only of principal plus accrued interest. And given that the Plan provided for payment in full of

---

**6.** H.U.D. notes, as did the bankruptcy court, that Congress repealed § 1124(3) as part of the Bankruptcy Reform Act of 1994. However, the provision remains in effect for reorganizations, such as the present one, that were filed prior to its repeal.

principal plus accrued interest, the bankruptcy court concluded that Continental's claim was not impaired since under § 1124(3), "a claim paid in full is not impaired." *Id.* at 9. This court reviews *de novo* the bankruptcy court's legal conclusion that Continental is an unimpaired creditor. *In re Johnson,* 960 F.2d 396, 399 (4th Cir.1992); *In re L & J Anaheim Assoc.,* 995 F.2d 940, 942 (9th Cir. 1993).

### 2.

■ Continental and H.U.D. argue on appeal that § 506(b) is inapposite because Continental does not seek "damages" for the violation of the lockout provision. Rather, it seeks the full value of the Note—that is, a value that reflects Continental's entitlement to a guaranteed income stream over time. The allowed claim, Continental and H.U.D. argue, reflects only the face value of the note and does not recognize that a note bearing an interest rate of 11%, under current financial conditions is worth significantly more than its face value. Thus, Continental and H.U.D. insist that although the Plan contemplates paying Continental its allowed claim in full, Continental's claim is impaired because the amount of the allowed claim is insufficient as a matter of law. In short, Continental and H.U.D. ask the court to define Continental's allowed claim broadly, as inherently encompassing some sort of premium for Shenandoah's prepayment of the Note. By defining Continental's allowed claim in this way, it is manifest, Continental argues, that it is not seeking damages separate from what it is entitled to under the terms of the Note, and that § 506(b) is, therefore, inapplicable.

The court concludes, however, that no matter how Continental chooses to characterize its claim, at bottom, it is seeking contract damages for Shenandoah's prepayment of the Note.

■ The court begins with the proposition that a typical prepayment penalty provision contained in a lending instrument is a "charge" within the meaning of § 506(b), and as such, is subject to that provision's requirement that the instrument provide for payment of the charge before the court may allow it as part of a creditor's secured claim. *See In re Duralite Truck Body & Container Corp.,* 153 B.R. 708, 711 (Bkrtcy.D.Md.1993)

(holding that "[t]he concept of 'charge' as used in § 506(b) encompasses prepayment charges"); *In re A.J. Lane & Co., Inc.,* 113 B.R. 821, 823 (Bkrtcy.D.Mass.1990) (holding that "[w]hatever rubric appears in the loan documents, the statutory language compels the conclusion that this requested [prepayment penalty] payment is one of the 'charges' which § 506(b) governs. Indicative is the additional use in § 506(b) of the more restrictive words 'fees, costs,' and the appearance in the following subparagraph (c) of the phrase 'costs and expenses.' Clearly, the term 'charges' in § 506(b) encompasses more than out-of-pocket expenses").

■ Thus, the question presented is whether the absence of a penalty provision in Continental's note transforms what would otherwise be a straightforward demand for a "charge" if the note provided for a penalty, into a demand for the "full value of the note," inherently freed from the strictures of § 506(b). The court can find no basis for maintaining such a distinction. Under Continental's thesis, a secured creditor that protects itself by including a penalty provision in its note would itself be penalized by receiving the payment provided for in the note instead of receiving the note's full value (assuming in some instances that a penalty payment does not accurately reflect that full value). Meanwhile a secured creditor that fails to include a penalty provision in its note reaps a substantial benefit by receiving the full value of the note. The court does not believe that such a result is warranted.

Moreover, adopting amorphous formulations of claims such as that proffered by Continental would provide creditors with an escape-hatch from § 506(b)'s requirement that certain payments sought by secured creditors must be provided for in the instrument. After all, most payments sought by creditors can be re-characterized as necessary to provide the creditor with the "full value" of an agreement.

Thus, the court concludes that the absence of a penalty provision in Continental's Note does not transform what would otherwise be a demand for a "charge," if the note provided for a penalty, into a demand for something other than just that.

H.U.D., however, cites *In re 360 Inns Ltd.,* 76 B.R. 573 (Bkrtcy.N.D.Tex.1987) for the proposition that, § 506(b) notwithstanding, bankruptcy courts may enforce lockout provisions by awarding prepayment premiums even where the instrument does not contain a separate damages provision. In *360 Inns,* the debtor, a limited partnership formed for the purpose of constructing and operating a hotel, executed a note with a creditor that contained a lockout provision. Specifically, the note prohibited "voluntary prepayment during the first ten years of its terms, and thereafter provides for a prepayment penalty on a declining scale as the note reaches maturity from 5% to a low of 1% of the amount prepaid. During the first ten loan years, however, the note does provide for an involuntary prepayment penalty in the sum of 10%." *Id.* at 575. The debtor in *360 Inns* eventually filed a voluntary Chapter 11 bankruptcy petition. The debtor's initial plan did not provide for any treatment of the prepayment penalty. At the initial confirmation hearing, the bankruptcy court

> advised the parties that since the debtor was solvent and owned a significant, unencumbered equity position in the [hotel] property, that the prepayment penalty, even if not includible in [the creditor]'s secured claim, must be treated in the debtor's plan of reorganization because of the interaction of § 1129(a)(7), the "best interests of creditors" test, and § 726(a)(4), the priority of distribution for penalties established for Chapter 7 liquidation cases.

*Id.* at 576.

Specifically, the bankruptcy court held that the plan could not be confirmed because under the "best interest of the creditors" test of § 1129(a)(7), the creditor "would be entitled to distribution in a Chapter 7 liquidation case of its matured prepayment penalty claim." *Id.* at 576. The debtor then submitted an amended plan which allowed it voluntarily to prepay the note within the first ten years "provided the 10% prepayment penalty is paid." *Id.* at 577. The bankruptcy court found that this treatment of the lockout provision met the "best interest of the creditors" test.

H.U.D. argues that the reasoning of *360 Inns* permits courts to award a prepayment premium even in the absence of an enforce-ment provision in the instrument providing for such damages. The court concludes, however, that *360 Inns* provides only marginal support for H.U.D.'s position.

First, the court in *360 Inns* sidestepped the issue squarely before this court—that is, whether § 506(b) precludes a creditor from receiving, as part of its secured claim, a prepayment premium where one is not provided for in the instrument. Rather, the *360 Inns* court held that "the prepayment penalty, even if not includible in [the creditor]'s secured claim [under § 506(b) ], must be treated in the debtor's plan of reorganization" since otherwise, the plan founders on the shoals of § 1129(a)(7). *360 Inns,* 76 B.R. at 576. Yet left unaddressed by the *360 Inns* court is whether the creditor was impaired under § 1124 due to the plan's treatment of the lockout provision, or whether the operation of § 506(b) left the creditor unimpaired due to the creditor's failure to heed that provision's requirement that any charge sought to be included as part of a creditor's secured claim must be provided for in the instrument. A threshold finding of impairment is essential, however, because only if the creditor were part of an impaired class would § 1129(a)(7) be implicated—if the creditor was not impaired, then the plan could be confirmed pursuant to § 1129 even if the plan failed the "best interests of creditors" test of § 1129(a)(7). *See* 11 U.S.C. § 1129(a)(8).

The court in *360 Inns* appears simply to have assumed that the creditor's claim was rendered impaired by the Plan's treatment of the lockout provision. Such an assumption, made without reference to 506(b) is, in this court's view, unwarranted. After all, if the prepayment penalty is, in fact, not includible as part of the creditor's secured claim under § 506(b), and if the plan otherwise provides for the payment in full of the creditor's secured claim (including any fees and charges provided for in the instrument), then the creditor is not impaired under § 1124 and § 1129(a)(7) becomes irrelevant to determining whether the plan may be confirmed.

In short, it appears to this court that the bankruptcy court in *360 Inns* put the cart before the horse by not engaging in the

threshold analysis of whether the creditor belonged to an impaired class. Thus, the ultimate conclusion in *360 Inns* that "[a]lthough the prepayment penalty may well have been an allowed secured claim under § 506(b), the resolution of this issue was not necessary because the plan was simply not confirmable as initially presented," *360 Inns*, 76 B.R. at 576, is somewhat of a non-sequitur. Accordingly, this court declines to adopt the reasoning of *360 Inns*.

█ Second, even if the court were persuaded by the reasoning employed in *360 Inns*, it could not reach the same result because the note at issue in *360 Inns* is substantially different from the present note. The note in *360 Inns* contained an explicit penalty formula for prepayment made after the first ten years of the loan. The note also provided for a 10% penalty for prepayment made involuntarily within the first ten years of the loan. The current note, in contrast, contains no prepayment damages formula whatsoever, nor does it contain a flat penalty for involuntary prepayment made within the first ten years of the loan. Rather, the current note simply states:

> Prepayment in whole or in part is prohibited prior to December 1, 2001. On or after December 1, 2001, prepayment may be made, in whole or in part, upon thirty (30) days advance written notice to Holder without prepayment penalty or charge.

*Record*, Vol. I, Tab 2.

Thus, the present note contains no formula, nor any specific figure, for calculating damages stemming from prepayment. Although the note in *360 Inns*, like the present note, did not contain a damages provision with respect to voluntary prepayment made within the first ten years of the loan, there was a concrete 10% damages figure in the note with respect to involuntary prepayment made within the same period. Thus, the debtor, and the bankruptcy court for that matter, were able reasonably to calculate a damages figure for voluntary prepayment made within the first ten years by borrowing from another, analogous provision in the note itself—i.e. the 10% figure applicable to involuntary prepayment made within the first ten years. This court, in contrast, cannot enforce the lockout provision by simply supplying a prepayment penalty figure contained elsewhere in the note since no such figure exists. In essence, the lockout provision, completely uncoupled from some sort of damages provision, is not specific enough to be enforced by this court.

In summary, the court declines H.U.D.'s invitation to read *360 Inns* as permitting courts to allow prepayment premiums in the absence of a provision, in the instrument itself, providing for damages in the event of prepayment. Instead, the court concludes that Continental is seeking a "charge" and that the charge is not provided for under the terms of the Note. Accordingly, § 506(b) commands that the charge be excluded from Continental's secured claim. Since the balance of Continental's claim is provided for under Shenandoah's Plan, the court finds that Continental is not impaired under § 1124(3), and that, therefore, the Plan satisfies the requirements of § 1129.

3.

For the sake of completeness, the court notes that Continental and H.U.D. make several additional arguments in support of their position that Continental is an impaired creditor. The court deals briefly with these arguments below.

█ Continental maintained at oral argument that a new claim, one wholly separate from any charge under § 506(b), arose when the bankruptcy court altered Continental's contractual rights, and that the Plan's failure to provide payment for that new claim renders Continental impaired. For support, Continental cites the definition of "claim" found at § 101(4) of the Bankruptcy Code. That provision defines a "claim" as a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(4). However, this language simply states the obvious—that if a creditor has a right to payment, it has a "claim" under Chapter 11. But the creditor must, of course, first show that it has a "right to payment" in order to have a "claim." Continental cites no case law for its proposition that the bankruptcy court's failure to enforce the lockout provision of the Note gives rise to an independent "right to payment." In essence, Continental's argument is simply an

argument based on chancery's right to fashion a remedy to meet the asserted injury. But equity follows the law which, in this case, is § 506(b).

■ Continental also argues that its claim is "impaired" under § 1124(3) because Shenandoah's Plan does not provide for payment of Continental's claim at a time certain. Rather, it provides for payment 10 days after the "Confirmation Date," *Record,* Vol. I, Tab 8, ¶ 4.2, "Confirmation Date" being defined rather ambiguously. *Id.* at ¶¶ 2.11, 2.12, 2.18. The court addressed this argument in its prior opinion, suggesting that the absence of a specific payment date did not render Continental's claim impaired. *Continental I,* 188 B.R. at 216–17 (citing *In re Wonder Corp. of America,* 70 B.R. 1018 (Bkrtcy. D.Conn.1987)). The court concludes, after considering further argument by counsel, that its previous analysis of the issue is well-founded.

H.U.D., for its part, argues that the court places undue importance on the absence of a prepayment penalty provision in the Note in concluding that Continental is not impaired. Indeed, H.U.D. maintains that pursuant to H.U.D.'s own regulations, Continental "was limited in its ability to both prohibit prepayments and provide a penalty for prepayments." *H.U.D. Brief* at 12. Yet that is precisely what H.U.D. and Continental ask this court to do: prohibit prepayment or provide a penalty for prepayment. For the reasons stated above, the court declines to do so. Certainly, H.U.D. is at liberty to amend its regulations should it feel that the integrity of its program requires the robust enforcement of prepayment prohibitions.

H.U.D. also takes issue with the court's suggestion in its prior opinion that § 502, which prohibits the payment of unmatured interest, might also prohibit the award of a prepayment premium since such an award would be similar to an award of unmatured interest. *Continental I,* 188 B.R. at 213–14. H.U.D. cites several cases for the proposition that a prepayment penalty is not "unmatured interest" for purposes of § 502. The court acknowledges the force of H.U.D.'s argu-

ment, but notes that it has no impact on the present analysis.

### B.

■ In addition to arguing that Shenandoah's Plan cannot be confirmed because Continental, as an impaired creditor, did not vote in favor of the Plan, Continental also argues that the Plan is not confirmable because it was not proposed in good faith. 11 U.S.C. § 1129(a)(3). Continental alleges that the only reason Shenandoah filed its petition was to extricate itself from the obligations imposed under the Note. It argues that Shenandoah is solvent[7] and that it has had no problem satisfying its debts in the past. The bankruptcy court, however, concluded that

> After listening to the proof presented in this hearing as well as the multitude of other courtroom proceedings in this matter, it has never been the opinion of this Court that this Chapter 11 proceeding was not in good faith. This Court concludes that the only avenue available to the parties to resolve their disputes was a voluntary petition in bankruptcy, and that petition was filed in good faith. No evidence has ever been presented to this Court that the debtor had any motives other than its financial reorganization.

*Record,* Vol. 2, Tab 1, at 10–11.

Bankruptcy Rule 8013 provides that a bankruptcy judge's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Bkrtcy.R. 8013, 11 U.S.C. A finding of fact is "clearly erroneous" "when, although there is evidence to support it, the reviewing court ... is left with the definite and firm conviction that a mistake has been made." *In re Morris Communications NC, Inc.,* 914 F.2d 458, 467 (4th Cir. 1990) (citing *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). On the record before it, this court will not disturb the bank-

---

**7.** Note that insolvency is not a prerequisite to filing a bankruptcy petition. *See* 11 U.S.C. § 109.

ruptcy court's finding that Shenandoah's plan was proposed in good faith.

Although Shenandoah was solvent, the record demonstrates that it was solvent only because one of its partners, Mr. Eavers, infused between $400,000 and $500,000 above his capital contribution into the partnership to keep it from going into default on several other obligations. *Record*, Vol. 3 at 64. Moreover, the record indicates that the partners had tried in vain for many years to settle their dispute in state court and that bankruptcy court was the last possible venue available for resolution of the dispute. *See, e.g., Record*, Vol. 3, at 67. Accordingly, the court cannot conclude that the bankruptcy court erred in finding that Shenandoah's Plan was proposed in good faith.

### III.

The court notes that Continental makes several additional arguments in support of its appeal. Principally, Continental argues that Shenandoah's Plan is violative of federal law and, therefore, cannot be confirmed. 11 U.S.C. § 1129(a)(3). The court addressed this argument in its previous opinion, *Continental I*, 188 B.R. at 218–19, and found it wanting. The court concludes, after reconsidering the issue in light of further argument, that its initial treatment of the issue was appropriate. The court additionally concludes that Continental's remaining contentions are without merit.

Finally, H.U.D. urges the court to enforce the lockout provision because failing to do so, it maintains, would undermine secondary markets spawned by the existence of such provisions, thereby jeopardizing H.U.D.'s ability to secure the provision of specialized housing. This interest, in H.U.D.'s view, outweighs Shenandoah's interest in reorganizing. However, neither H.U.D. nor Continental presented evidence of such harmful market effects at the confirmation hearing before the bankruptcy court. This court, sitting as an appellate court in this matter, will not consider evidence not part of the record below. The court's conviction in this regard is strengthened by the fact that H.U.D. became aware of Shenandoah's Chapter 11 petition almost a full year before the bankruptcy court confirmed the Plan, yet it failed to raise its concerns prior to this appeal. *See Affidavit of Craig Redinger.*

### IV.

For the foregoing reasons, the court affirms the judgment of the bankruptcy court confirming Shenandoah's Second Amended Plan of Reorganization and denying Continental's motion for reconsideration. An appropriate Order shall this day issue.