**In re ATLANTIC TERRACE
APARTMENT CORP.,
Debtor.**

No. 897–86127–346.

United States Bankruptcy Court,
E.D. New York.

June 15, 1998.

D.J. Cohen, and M. Simon, Marilyn Simon & Associates, New York City, for Flatiron Property Corp. (Flatiron).

B. Weiner, Rosenberg, Musso & Weiner, LLP, Brooklyn, New York, for Atlantic Terrace Apartment Corp. (Atlantic).

D. Hartheimer, Assistant United States Trustee, Office of the United States Trustee, Garden City, New York, Trustee.

## *MEMORANDUM OF DECISION CONFIRMING IMPAIRED CREDITOR'S PLAN OF REORGANIZATION*

FRANCIS G. CONRAD *, Bankruptcy Judge.

The issue before us today[1] arose during the course of the confirmation hearing held on June 2, 1998 (Hearing) on secured creditor Flatiron's Chapter 11 Plan of Reorganization (Plan). Debtor objected to the Plan, arguing that Flatiron's claim is not impaired, and that the only two impaired classes rejected the plan. Consequently, Debtor argues, Flatiron can't invoke the cramdown provisions of 11 U.S.C. § 1129(b)[2] over its objection. We find that Flatiron is an impaired creditor. Flatiron voted to accept the plan, and in accordance with my ruling from the bench on June 2, 1998, Flatiron's plan is confirmed. We write to elaborate the bench ruling.

### DISCUSSION

Atlantic is a 98–unit cooperative located in Montauk, New York (Property), the east end of Long Island. The Montauk resort community comes into its own during spring, summer and early fall, when renters descend to begin their long-awaited vacations. Most

---

* Of the District of Vermont, sitting by special designation in the Eastern District of New York.

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to the Court under Rule 4 of the General Rules of the United States District Court for the Eastern District of New York. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L) and (N). This Memorandum of Decision constitutes Findings of Fact and Conclusions of Law under Fed.R.Civ.P. 52 as made applicable by Fed. R. Bankr.P. 7052.

2. All citations are to the Bankruptcy Code, Title 11, United States Code, unless otherwise noted.

of the owners of the individual units engage in a self-rental program, with a salaried manager approved by the Board of Directors keeping a watchful eye.

In 1988, Manufacturers and Traders Trust Company (Manufacturers), successor by merger to East New York Savings Bank, lent Debtor $4.2 million, secured by a first mortgage on the Property. To facilitate an easier repayment schedule, the obligation was bifurcated into a $3.0 million interest-bearing first mortgage, and a $1,192,031.56 non-interest-bearing second mortgage. Both notes matured on July 1, 1997. Sensing the tremor of the impending assignment to Flatiron and hoping to shield themselves from the waves of a foreclosure proceeding, Atlantic, unable to meet its financial obligations, filed for Chapter 11 protection on August 14, 1997. At the time of filing, Property was valued at $2.9 million. New York Savings Bank's secured claim was listed as $4,192,031.56. On August 28, 1997, Manufacturers assigned its notes and mortgages to Flatiron.

After an initial negotiating period and an expired cash collateral order, Flatiron and Debtor filed competing disclosure statements. Flatiron objected to Debtor's disclosure statement. No objections were filed to Flatiron's disclosure statement. Debtor's plan proposed to classify Flatiron as the Class II Claimant, providing for an allowed secured claim of $4,319,451.81. Debtor proposed to pay Flatiron the present value of its secured claim which Debtor valued at $3,000,000.00; Flatiron was to have an unsecured claim for the balance. For a number of reasons, including lack of feasibility and Debtor's failure to provide adequate information in its disclosure statement under 11 U.S.C. § 1125(a), Debtor's disclosure statement was denied.

Flatiron's disclosure statement treated itself as an impaired creditor, acknowledging a validly perfected, enforceable, first priority lien valued at $4,319,451.81. This claim would be satisfied from an auction of the Property that Flatiron proposed to hold before the hearing on confirmation. The plan contemplated a sale of the Property to the highest and best offer. Flatiron was allowed to bid in up to the allowed amount of its claim, and the claim would be satisfied from the proceeds of the sale or by a transfer of title to Flatiron. Flatiron's disclosure statement was approved. The auction sale and hearing on confirmation were scheduled for June 2, 1998.

In a last-hour attempt to retain control of its asset, Debtor filed for a Temporary Restraining Order (TRO) that sought to enjoin Flatiron from conducting the auction sale. At the June 2, 1998 TRO hearing, after having heard argument from Debtor in support of the complaint, Flatiron's objection, and the testimony of Donald Black, President of the Cooperative, we found that Debtor had not and could not meet the standards required for a temporary restraining order. There was no irreparable harm shown, nor could Debtor show a reasonable likelihood of success on the merits. *ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 64 (2d Cir.1996); *Robert Pashaian v. Eccelston Properties, Ltd.*, 88 F.3d 77, 85 (2d Cir.1996); *Hirschfeld v. Board of Elections*, 984 F.2d 35, 39 (2d Cir.1993); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979).

At the auction which followed immediately, Flatiron was the successful bidder at $3,000,-000.00. An order confirming the sale was entered June 2, 1998.

We then moved to the hearing on Flatiron's Plan and Debtor's objection to confirmation. Debtor contends emphatically that Flatiron's claim is not impaired. Only Flatiron voted to accept the Plan. Class 5 unsecured impaired creditors rejected the Plan and of the Class 6 impaired leaseholders that voted, four accepted and thirty-nine rejected the Plan. Shortly thereafter, Flatiron's plan was confirmed. Debtor objected that no impaired class of creditors had accepted the plan.

■ Debtor cites *In re 183 Lorraine Street Associates*, 198 B.R. 16, 29 (E.D.N.Y. 1996), for the proposition that a secured creditor can't be impaired if the plan provides for the creditor to receive title to the property, thus enhancing its position. In *Lorraine, supra,* the secured creditor had already commenced state foreclosure pro-

ceedings and was waiting for a judgment of sale when the bankruptcy was filed. Creditor filed a plan that had been amended and confirmed, and that provided for an auction sale five days after confirmation. *Id.* at 21. Creditor was the successful bidder. *Id.*

The court, in *Lorraine*, found that the secured creditor had appeared to "elect the application of 11 U.S.C. § 1111(b)(2) because the Plan classified UCC's entire $5.2 million claim as a single, secured claim." *Id.* at 27. Here, Flatiron *did not* make an 1111(b) election. This issue was raised, discussed and disposed of at the disclosure hearing in the following colloquy between Flatiron's counsel and the Court:

> MS. COHEN: Your Honor, we have never indicated in our disclosure statement that we were fully secured. We had just indicated that we had a valid security interest, and we never got into what the value of the property was because that would be, of course, determined at the proposed auction sale. And with respect to any claim in excess, it would be deemed an unsecured claim, and we did not make any sort of 1111(b) election or otherwise and we are not agreeing to—we are not acknowledging or admitting we are fully secured in any way.

> ...

> THE COURT: ... I read their plan. They didn't make an 1111. They just said they are secured. That is all they said.

Transcript, April 21, 1998, p. 9–10.

In *Lorraine, supra* at 29, the secured creditor argued it was impaired because it was to receive less than the full amount of its allowed claim. The District Court disagreed saying that any plan that gave this creditor title to the premises would leave that claim unimpaired. *Id.*; see 11 U.S.C. § 1124(1) (A claim is unimpaired if the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest").

We disagree with Debtor and find that Flatiron is impaired. Flatiron's claim has been altered as it will not be receiving the value of its claim. Its claim arose from an investment transaction-cash for a mortgage note. Now, Flatiron is receiving a deed for its claim. If Flatiron received the cash value of its claim it would be in a position to turn around and invest again. Now, when Flatiron turns around, it will be a landowner. To find that Flatiron is not impaired would send a message that all secured creditors who receive *anything* other than their bargained for investment, could be elevated to a better position than they were before the bankruptcy filing.

The 9th Circuit's discussion of "impaired" in *L & J Anaheim Assoc. v. Kawasaki Leasing International, Inc. (In re L & J Anaheim Associates),* 995 F.2d 940, 943 (9th Cir.1993) is convincing. In *L & J,* the court confirmed, over objection, secured creditor's plan providing for an auction of all of the debtor's assets and thereby altering the creditor's rights. "[W]e have no occasion to ask whether Kawasaki's rights were effectively enhanced or diminished under the Plan; our inquiry ends with the conclusion that those rights were changed." 995 F.2d at 943. Acknowledging that "impairment" is a term of art created by Congress, the court dissected the language of section 1124 and concluded that the statute did not say "only alterations of a particular kind or degree constitute impairment." *Id.* Nothing in the statute says an improvement in the creditor's position is not an impairment. *See In re Wabash Valley Power Assoc.,* 72 F.3d 1305, 1321 (7th Cir.1995), *cert. denied,* — U.S. ——, 117 S.Ct. 389, 136 L.Ed.2d 305 (1996) (A creditor was impaired where its position might be enhanced by participating in a settlement agreement where viability of its claim was contingent on the plan being confirmed.)

## CONCLUSION

Flatiron's Plan altered its legal rights. Accordingly, its claim was impaired, and its vote to accept the Plan was proper. Flatiron shall settle an order consistent with this Memorandum of Decision within 10 days hereof, upon five days notice to debtor.