895 F.2d 1381
 22 Collier Bankr.Cas.2d 868, Bankr. L. Rep. P 73,279
In re Robert L. SUBLETT and Lenora A. Sublett, Debtors.
EQUITABLE LIFE ASSURANCE SOCIETY, Plaintiff-Appellant, Cross-Appellee,
v.
Robert L. SUBLETT and Lenora A. Sublett,
Defendants-Appellees, Cross-Appellants.
 No. 89-7300.
 United States Court of Appeals,
Eleventh Circuit.
 March 8, 1990.
 
 Tazewell T. Shepard, Bell, Richardson & Sparkman, Huntsville, Ala., for plaintiff-appellant, cross-appellee.
 John M. Heacock, Jr., Lanier, Ford, Shaver & Payne, Huntsville, Ala., for defendants-appellees, cross-appellants.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before KRAVITCH and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 Creditor, the Equitable Life Assurance Society ("Equitable"), appeals from the district court's denial of its claim for certain interest charges arising out of a loan made by Equitable to the debtors, Robert L. and Lenora A. Sublett ("the Subletts"), in this proceeding under Chapter 11 of the Bankruptcy Code of 1978, 11 U.S.C.A. Secs. 1101-1174 (West 1979 & Supp.1989). The Subletts cross-appeal from the district court's grant of Equitable's claim for certain interest charges on Equitable's attorney's fees.
 
 I. STATEMENT OF THE CASE
 
 2
 The Subletts operate a family farm in Madison County, Alabama. On February 16, 1978, they borrowed $765,000 from Equitable and executed a promissory note for that amount payable in 20 annual installments from January 1, 1979 to January 1, 1998, with the remaining principal balance due on January 1, 1999. The promissory note provided that each installment would consist of $23,000 principal and 9% interest on the outstanding principal debt. The note was secured by a perfected, first-lien mortgage on the Subletts' land. The Subletts paid the first five installments on the loan; on June 6, 1983, however, they filed a voluntary Chapter 11 petition and thereafter ceased making regular annual payments. They continue, however, to operate the farm as debtors-in-possession.
 
 
 3
 On June 15, 1988, the Subletts sold a portion of their land and filed a motion with the bankruptcy court for permission to use the proceeds to pay several creditors, including Equitable. The Subletts proposed to pay Equitable the outstanding principal balance of the loan, $650,000, plus the contractual 9% interest computed annually from January 1, 1984 to August 1, 1988, for a total of $943,537.50.[1] On August 1, 1988, however, the day on which the bankruptcy court heard the Subletts' motion, Equitable filed an amended proof of claim with the bankruptcy court in the amount of $1,071,563.27.[2] The difference of $128,025.77 breaks down into four components. First, Equitable claimed $86,808.91 in interest, computed at an annual rate of 12%, on the interest portions of the unpaid installments from 1984 to 1988. Second, Equitable claimed $8,922.10 in interest, computed at the rate of a 3% annual surcharge on the underlying contractual rate of 9%, on the principal portions of the unpaid installments from 1984 to 1988. Third, Equitable claimed $28,142.03 in attorney's fees that it had incurred in the course of the litigation.[3] Fourth, Equitable claimed $4,152.73 in interest, computed at an annual rate of 12%, on the foregoing attorney's fees. Equitable agreed to accept payment of the undisputed $943,537.50 and the remaining $128,025.77 was placed in an escrow account.
 
 
 4
 On September 23, 1988, the bankruptcy court awarded Equitable attorney's fees, but disallowed its claims for interest on the unpaid installments and interest on the attorney's fees.[4] Equitable appealed to the district court. The Subletts did not cross-appeal to the district court and have not challenged the award of attorney's fees. On April 3, 1989, the district court affirmed the bankruptcy court's disallowance of the interest on the unpaid installments and reversed the bankruptcy court's disallowance of the interest on attorney's fees. Equitable appeals to this Court on the former issue, and the Subletts cross-appeal on the latter issue.
 
 II. DISCUSSION
 A. Standard of Review
 
 5
 This Court's standard of review with regard to determinations of law, whether made by the bankruptcy court or by the district court, is de novo. With regard to the bankruptcy court's factual determinations, "clearly erroneous" review applies. See In re Thomas, 883 F.2d 991, 994 (11th Cir.1989); Bankr.Rule 7052 (incorporating Fed.R.Civ.P. 52); Bankr.Rule 8013. The district court in a bankruptcy appeal, like this Court itself, functions as an appellate court in reviewing the bankruptcy court's decision. See 28 U.S.C.A. Sec. 158(a), (c). Neither the district court nor this Court is authorized to make independent factual findings; that is the function of the bankruptcy court. See Bankr.Rules 7052, 8013; Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir.1987). "If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court ... must remand the case to the bankruptcy court for the necessary factual determination." Wegner, 821 F.2d at 1320. Moreover, "[a]s the second court of review," this Court's review of the district court's decision is entirely de novo. See id.[5]
 
 
 6
 Under traditional principles of contract law, the bankruptcy court's interpretation of the loan instruments in this case is a legal determination subject to de novo review if the contractual language is unambiguous. Where the language is ambiguous, however, and requires consideration of extrinsic evidence of the actual intentions of the parties, the bankruptcy court's determinations as to those intentions are findings of fact subject only to "clearly erroneous" review. See International Brotherhood of Boilermakers v. Local Lodge D111, 858 F.2d 1559, 1561 (11th Cir.1988), cert. denied, --- U.S. ---- 109 S.Ct. 1955, 104 L.Ed.2d 424 (1989); Brewer v. Muscle Shoals Board of Education, 790 F.2d 1515, 1519 (11th Cir.1986); see also In re Navigation Technology Corp., 880 F.2d 1491, 1495 (1st Cir.1989).[6] Furthermore, the initial question whether the contractual language is ambiguous or not is itself a question of law. Boilermakers, 858 F.2d at 1561; accord Navigation Technology, 880 F.2d at 1495.
 
 B. Interest on the Unpaid Installments
 
 7
 The Subletts contend, and the bankruptcy court held, that Equitable's claim for interest on the unpaid installments should be disallowed as "unfair to the other creditors."[7] The bankruptcy court relied heavily, as do the Subletts, on the Supreme Court's decision in Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). In that case the Court noted the "general rule in bankruptcy" against allowing post-petition interest on claims against the debtor. Id. at 163, 67 S.Ct. at 240. Vanston also noted the exception to that rule which allowed "[s]imple interest on secured claims accruing after the petition was filed" where "the security was worth more than the sum of the principal and interest due." Id. at 164, 67 S.Ct. at 240. In Vanston, as apparently in the present case, it was not disputed that the claim at issue was oversecured and that the creditor was entitled to simple interest on the outstanding debt. See id. at 159, 67 S.Ct. at 238. Nevertheless, the Court in Vanston, invoking considerations of equity, refused to allow the creditor's claim for interest on unpaid interest. See id. at 165-67, 67 S.Ct. at 241-42.
 
 
 8
 We note first of all that the 1978 enactment of the revised Bankruptcy Code--which postdates Vanston by 32 years--worked major substantive and procedural changes in bankruptcy law. See United States v. Ron Pair Enterprises, Inc., --- U.S. ----, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The bankruptcy court failed to cite or acknowledge any provision of the current Bankruptcy Code or any case decided under its provisions. These sources, rather than Vanston, should have been the starting point for the bankruptcy court's analysis. As it happens, 11 U.S.C.A. Sec. 506(b) (West Supp.1989) provides:
 
 
 9
 To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.
 
 
 10
 As the Supreme Court has recently held, "[t]he natural reading of [section 506(b) ] entitles the holder of an oversecured claim to postpetition interest and, in addition, gives one having a secured claim created pursuant to an agreement the right to reasonable fees, costs, and charges provided for in that agreement." Ron Pair, 109 S.Ct. at 1030.[8] Assuming that Equitable's claimed interest charges on the unpaid installments were "provided for" by the loan instruments and were otherwise "reasonable" under applicable Alabama law, this statutory language precludes disallowance of those charges if Equitable's claim was in fact oversecured. See Mack Financial Corp. v. Ireson, 789 F.2d 1083, 1084 (4th Cir.1986); Matter of LHD Realty Corp., 726 F.2d 327, 333 & n. 8 (7th Cir.1984).[9]
 
 
 11
 The bankruptcy court's reliance on Vanston to disallow Equitable's claim on the equitable ground that it would be "unfair to the other creditors" is fatally flawed in two respects. First, it is established that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S.Ct. 963, 968-69, 99 L.Ed.2d 169 (1988). As the Ninth Circuit has held: "Although an award of post-petition interest is governed generally by the equities of the case, the Bankruptcy Code provides oversecured creditors with certain statutory rights to interest. 11 U.S.C. Sec. 506(b) allows oversecured creditors to assert rights to interest provided in the security agreement as part of a secured claim." In re Anderson, 833 F.2d 834, 836 (9th Cir.1987) (citation omitted). Thus, to the extent that Vanston's equitable analysis suggests a result contrary to the language of the present Bankruptcy Code, Vanston has been superseded. Second, Vanston recognized the principle--long established under pre-Code bankruptcy law--that claims for post-petition interest should be allowed in full where the debtor's estate ultimately proves to be solvent (i.e., where the debtor's assets are sufficient to pay the claims of all creditors). See Vanston, 329 U.S. at 164-65, 67 S.Ct. at 240-41; see also Ron Pair, 109 S.Ct. at 1033; New York v. Saper, 336 U.S. 328, 330 n. 7, 69 S.Ct. 554, 555 n. 7, 93 L.Ed. 710 (1949); American Iron and Steel Mfg. Co. v. Seaboard Air Line Ry., 233 U.S. 261, 266-67, 34 S.Ct. 502, 504-05, 58 L.Ed. 949 (1914). This "solvency exception" did not arise in Vanston because the debtor in that case was insolvent. See Vanston, 329 U.S. at 159, 67 S.Ct. at 238.[10]
 
 
 12
 Application of the foregoing legal principles renders crucial the factual issues of whether Equitable's claim is oversecured and whether the Subletts' bankruptcy estate is solvent. There seems to be no doubt that Equitable's claim is oversecured. The Subletts appear to concede as much[11] and the district court stated that the Subletts received approximately $1.9 million for the June 15, 1988 sale of only a portion of their land.[12] It also appears to be conceded on appeal that the Subletts' estate is solvent, in the sense that the assets of the estate are more than sufficient to pay all of the creditors' claims.[13] It therefore appears that the bankruptcy court's disallowance of Equitable's claim on the grounds stated in its opinion was erroneous as a matter of law. Because only the bankruptcy court can make the requisite factual findings, however, and because its opinion is silent on these crucial issues, we have no choice but to remand the case in order for the necessary findings to be made and appropriate conclusions of law drawn therefrom.
 
 
 13
 The Subletts contend, in the alternative, that Equitable's claim for interest on the unpaid installments should be disallowed because it is not authorized by the loan instruments and is unreasonable under governing contract law, given the bankruptcy court's finding that Equitable exercised its option to accelerate the entire debt following the Subletts' default.[14] The bankruptcy court did not explicitly find that Equitable's claim was authorized by the loan instruments and reasonable under Alabama law; it either implicitly so found or assumed as much for purposes of its holding. Because the bankruptcy court has not yet ruled on this issue, we see no reason for this Court to do so at this stage. We therefore leave this issue to be resolved on remand.
 
 C. Interest on Attorney's Fees
 
 14
 This issue turns on whether the loan instruments authorize interest on attorney's fees under the circumstances of this case. The contractual language at issue provides for interest on attorney's fees incurred only "by reason of litigation with third parties to protect the lien of this mortgage." We find this language unambiguous and we therefore agree with the district court that the bankruptcy court's interpretation of it is subject to de novo review. We do not believe, however, that the bankruptcy court's resolution of this issue turned on its interpretation of the language. Rather, the language renders crucial the factual issue of whether the attorney's fees were indeed incurred in the course of litigation to protect Equitable's lien. The bankruptcy court's implicit negative finding on that issue is not clearly erroneous. Although it may be true, as the district court observed, that "Equitable had to constantly protect its interest from the debtors and from other creditors," there was ample evidence, notably the July 8, 1988 deposition testimony of Tom Mercer on behalf of Equitable, that Equitable has never been involved in any litigation with third parties (i.e., other creditors) to protect its mortgage lien. Indeed, Equitable asserts on appeal that "[t]he perfection and enforceability of Equitable's mortgage as a first lien against the debtors' real property have never been challenged and are not in dispute." Initial Brief of Appellant at 5. For these reasons, the district court erred in reversing the bankruptcy court on this issue.
 
 III. CONCLUSION
 
 15
 For the reasons stated, we REVERSE the district court's judgment on both issues in this case. We REMAND the case to the district court with instructions to (1) REVERSE the bankruptcy court's disallowance of Equitable's claimed interest on the unpaid installments and REMAND the case to the bankruptcy court for appropriate findings of fact and conclusions of law on that issue in accordance with this opinion, and (2) AFFIRM the bankruptcy court's disallowance of Equitable's claimed interest on attorney's fees.
 
 
 
 [1]
 This figure also takes into account a partial payment of $33,250 made by the Subletts on the January 1, 1984 installment
 
 
 [2]
 The bankruptcy court gave this amount as $1,071,563.77. Other figures cited by the bankruptcy court, however, and Equitable's proof of claim contained in the record, indicate that the apparent discrepancy is a typographical error
 
 
 [3]
 The bankruptcy court cited $28,610.53 as the amount of attorney's fees claimed by Equitable. This apparently represents an adjustment in Equitable's claim subsequent to August 1, 1988 and prior to the bankruptcy court's decision of September 23, 1988. This discrepancy does not concern us because the bankruptcy court's award of attorney's fees to Equitable in the above amount has not been contested before the district court or this Court
 
 
 [4]
 The bankruptcy court did not specifically address the issue of Equitable's claimed interest on the principal portions of the unpaid installments, discussing in its opinion only Equitable's claim for "interest on interest," and for attorney's fees and interest on attorney's fees. However, the bankruptcy court necessarily disallowed all of Equitable's disputed claims other than for attorney's fees, by ruling that upon payment of the attorney's fees, "[Equitable's] claim shall be fully satisfied."
 
 
 [5]
 This follows from the fact that this Court applies the same standard of review as does the district court to the conclusions--both factual and legal--of the bankruptcy court. The Eighth Circuit in Wegner refers, somewhat imprecisely we think, to "the district court's factual and legal conclusions." 821 F.2d at 1320 (emphasis added). This Court has shown the same imprecision on occasion. See In re Jet Florida Systems, Inc., 861 F.2d 1555, 1558 (11th Cir.1988) (stating that "we must affirm the findings of the district court unless they are clearly erroneous," and that "when the district court has affirmed the bankruptcy court's findings ... we will apply the clearly erroneous doctrine with particular rigor"). Strictly speaking, of course, the district court in a bankruptcy appeal under 28 U.S.C.A. Sec. 158(a) does not reach any "factual" conclusions. The question whether a given factual finding is "clearly erroneous" is itself a legal question, just as the question of sufficiency of the evidence in a criminal case is a legal issue. See Anderson v. Bessemer City, 470 U.S. 564, 577, 105 S.Ct. 1504, 1513, 84 L.Ed.2d 518 (1985) (Supreme Court applying de novo review to Court of Appeals' application of "clearly erroneous" standard, noting that "[t]he question we must answer ... is not whether the [Court of Appeals'] interpretation of the facts was clearly erroneous, but whether the District Court's finding [as the court of first instance in that case] was clearly erroneous"); United States v. Kelly, 888 F.2d 732, 739 (11th Cir.1989)
 The point of this Court's above-quoted language in Jet Florida, which is fully consistent with the principles discussed here, is simply that a district court's conclusion that a bankruptcy court's factual finding is not "clearly erroneous" is normally entitled to some persuasive weight. Jet Florida relied on Birmingham Trust National Bank v. Case, 755 F.2d 1474 (11th Cir.1985), which stated: "We must affirm the findings of the bankruptcy court unless they are clearly erroneous. Moreover, '[s]trict application of the clearly erroneous doctrine becomes paramount when, as here, the District Court affirmed the bankruptcy court's findings.' " Id. at 1476 (citation omitted). Neither Birmingham Trust nor Jet Florida suggests that a district court's reversal of a bankruptcy court's factual finding permits or requires this Court to reject such a finding, unless we are independently convinced, upon de novo review, that it is in fact "clearly erroneous." The amount of persuasive weight, if any, to be accorded the district court's conclusion on this legal issue is entirely subject to our discretion.
 
 
 [6]
 In In re Alchar Hardware Co., Inc., 764 F.2d 1530, 1534 (11th Cir.1985), this Court, in a bankruptcy appeal, held flatly that "[i]nterpretations of contracts by a trier of fact are reviewable under the clearly erroneous standard." Alchar involved an ambiguous contract, however, which required inquiry into the intentions of the parties; this Court held that "[i]n view of the contradiction in [certain contractual terms], as well as our examination of the record as a whole, we cannot say that the bankruptcy court's construction ... was clearly erroneous." Id. Thus, we perceive no tension between Alchar and the well established principles restated above
 
 
 [7]
 We shall discuss the bankruptcy court's holding as it applies to Equitable's claimed interest on both the interest and principal portions of the unpaid installments, although the bankruptcy court explicitly discusses only the "interest on interest." See note 4, supra
 
 
 [8]
 Ron Pair did not address the precise issue presented here, but held that oversecured creditors are entitled under Sec. 506(b) to simple post-petition interest on claims secured by nonconsensual tax liens. Ron Pair indicates, however, that the Supreme Court reads Sec. 506(b) according to the plain meaning of its language, regardless of any contrary doctrines under pre-Code caselaw. See id. 109 S.Ct. at 1031 ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.' ") (citation omitted; brackets in original). Ron Pair itself rejected a purported equitable "rule" under pre-Code caselaw under which some courts had disallowed post-petition interest on claims secured by nonconsensual tax liens. See generally id. at 1031-34. Thus, while not dispositive of this case, Ron Pair is strongly suggestive of the correct analytical approach
 
 
 [9]
 The "reasonableness" of charges under Sec. 506(b) is determined by reference to the relevant state contract law. See Mack, 789 F.2d at 1084 (consulting Virginia law); LHD Realty, 726 F.2d at 333 n. 8 (consulting Indiana law)
 
 
 [10]
 The First Circuit, applying pre-Code bankruptcy law, has summarized the three circumstances where,
 [d]espite the general prohibition on the payment of postpetition interest ... [i]nterest may accrue: (1) where the bankrupt ultimately proves to be solvent; (2) where securities, held by the creditor produce income after the filing of the petition; and (3) where the amount of the secured creditor's security is sufficient to satisfy both the principal and interest due on the secured claim.
 In re Boston and Maine Corp., 719 F.2d 493, 496 (1st Cir.1983), cert. denied, 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984).
 
 
 [11]
 The Subletts state on appeal that "(as in Vanstan [sic] there were funds from which such payment [of Equitable's claimed interest] could be made, albeit to the detriment of other creditors." Initial Brief of Appellees at 19. In Vanston, as we have noted, the creditor's claim was oversecured
 
 
 [12]
 Equitable's oversecured status also explains the bankruptcy court's undisputed award of simple post-petition interest on the principal debt owed to Equitable
 
 
 [13]
 At oral argument the following colloquy occurred concerning the solvency issue:
 JUDGE TUTTLE: [I]f the actual value of the assets [of the Subletts' bankruptcy estate] exceeded the total amount of the [the Subletts'] other debts, how would it be inequitable [to the other creditors] to enforce [Equitable's claim]?
 ....
 MR. HEACOCK [COUNSEL FOR THE SUBLETTS]: I'm saying, Your Honor, that ... if Vanston stands for nothing more than a pure balance sheet analysis [of solvency]--and nothing more--Your Honor's position would be correct.
 As noted above in the text, it is clear that Vanston's equitable analysis, contrary to the position of the Subletts, would not apply to a solvent debtor.
 The district court noted that "it does not appear from the record of the [bankruptcy] court that the debtor has been adjudged solvent." The district court was therefore obligated--as this Court is now obligated--to remand to the bankruptcy court for any necessary factual finding in this regard. The district court should not have assumed from the bankruptcy court's silence that the Subletts were insolvent, and should not have attempted, as it did, to engage in its own de novo analysis of the Subletts' debts and assets.
 
 
 [14]
 Equitable challenges the bankruptcy court's factual finding in this regard. The finding is not clearly erroneous, however; it is well supported by the July 8, 1988 deposition of Jack Joyner, an official representing Equitable, and by Equitable's original and amended proofs of claim beginning in 1984, which indicate that it has consistently sought payment of the entire loan principal plus interest since the Subletts defaulted