**In the Matter of William K. HOLMES, Debtor.**

**William K. Holmes, Movant,**

**v.**

**Citigroup Investments AgriFinance, as Successor in Interest to the Travelers Insurance Company, Respondent.**

**No. 02–52793 RFH.**

United States Bankruptcy Court, M.D. Georgia, Macon Division.

July 1, 2005.

Joseph J. Burton, Jr., Atlanta, GA, for Movant.

T. Baron Gibson, II, Michael N. White, Macon, GA, for Respondent.

### MEMORANDUM OPINION

ROBERT F. HERSHNER, JR. Chief Judge.

William K. Holmes, Movant, filed on January 24, 2005, his Motion Under Section 506(b) For Determination of Secured Status and Objection to Claim of Citigroup Investment AgriFinance as Successor in Interest to The Travelers Insurance Company for Default Interest and Other Charges. Movant's motion came on for hearing on March 8, 2005. The Court, having considered the record, the stipulation of facts, and the arguments of counsel, now publishes this memorandum opinion.

Movant executed two promissory notes dated November 26, 1996, in favor of The Travelers Insurance Company. The principal amount of the obligations totaled $2,300,000. The promissory notes [1] provide for, in relevant part, (1) an 18 percent per annum default rate of interest; (2) prepayment premiums should Movant prepay the obligations; and (3) payment of reasonable attorney's fees, costs, and expenses if the obligations are referred to an attorney for collection. The promissory notes are to be governed and construed according to Georgia law. The promissory notes provide that the loans were exclusively for commercial or business purposes.

---

1. The promissory note for Loan No. 206582 for $2,000,000 is attached to Respondent's proof of claim. The Court will assume that the promissory note for the $300,000 obligation is identical.

Movant's obligations were secured by two deeds to secure debt. Citigroup Investments AgriFinance, Respondent, is the successor-in-interest to The Travelers Insurance Company.

Movant filed a petition under Chapter 11 of the Bankruptcy Code on July 31, 2002. Movant is the Chapter 11 debtor-in-possession. Movant's proposed Chapter 11 plan of reorganization is pending before the Court.

The Court entered an order on September 13, 2004, approving the sale of Movant's principal asset, some 6,708 acres of real property. The gross sales price was $13,250,000.

Respondent's deeds to secure debt were first priority liens on 3,814.5 acres of Movant's real property. The value of Respondent's collateral was $7,534,604.20. Respondent filed a proof of claim asserting a secured claim for $1,619,296.41. Respondent's claim, at all relevant times, was oversecured. On October 5, 2004, Respondent was paid the full outstanding principal balance of its claim, $1,450,000.00

Respondent contends that it is also entitled to the following as part of its oversecured claim: [2]

|  |  | Amount |
|---|---|---|
| (1) | Pre–Default Interest at 6.03% | $ 223,342.39 |
| (2) | Post–Default Interest at 18% | $ 399,960.06 |
| (3) | Pre–Payment Premium | $ 135,675.00 |
| (4) | Attorney Fees | $ 8,715.69 |
| (5) | Interest on Attorney Fees | $ 2,541.76 |
|  |  | $ 770,234.90 |

**2.** Respondent's proof of claim was filed on October 22, 2002. Some of the additional interest, fees, and charges that Respondent seeks are for the period after Respondent filed its proof of claim.

**3.** Debtor's Memorandum of Law in Support of its Motion Under Section 506(b) for Determination of Secured Status and Objection to Claim of Citigroup Investment AgriFinance as Successor in Interest to the Travelers Insur-

Movant concedes that Respondent is entitled to pre-default interest of $223,342.39 and attorney fees of $8,715.69.[3]

Movant's counsel is holding in a special reserve account some $1,000,000 for payment of the balance of Respondent's claim and the claims of other creditors. Unpaid junior priority creditors include the Internal Revenue Service which filed an amended claim for $10,558,072.20, and the Georgia Department of Revenue which filed a claim for $2,981,433.21. Movant's estate is insolvent and all creditors will not be paid in full.

The stipulation of facts state that Respondent's prime rate of interest from July 1, 2002, until March 21, 2005,[4] fluctuated from 4.75 percent to 5.50 percent. *Stipulation No. 8.*

Section 506(b) of the Bankruptcy Code provides:

§ 506. Determination of secured status

. . .

(b) To the extent that an allowed claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C.A. § 506(b)(West 2004).

■ "Recovery of postpetition interest [under 506(b)] is unqualified. Recovery of

ance Company for Default Interest and Other Charges, p. 5–6, (filed April 1, 2005), Docket No. 234. (hereafter "Debtor's Memorandum of Law").

**4.** These dates represent the approximate dates from the filing of Movant's bankruptcy petition until the date Movant's motion came on for hearing.

fees, costs, and charges, however, is allowable only if they are reasonable and provided for in the agreement under which the claim arose." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

*Collier on Bankruptcy* states in part:

¶ 506.04 Entitlement to Postpetition Interest, Costs and Fees; § 506(b).

. . .

■—Entitlement to Postpetition Interest.

. . .

[b]—Determining Applicable Interest Rate.

. . .

[ii]—Supplemental Interest Charges.

In addition to specifying a basic interest rate, a financial contract may also make provision for the payment of a variety of other kinds of obligations, including (i) default rates of interest, (ii) interest on interest, (iii) late charges, (iii) prepayment charges, and the like. Most courts have allowed, or at least recognized a presumption of allowability for, default rates of interest, provided that the rate is not unenforceable under applicable nonbankruptcy law. In general, just as there is no express mechanism in section 506(b) for adjusting basic interest rates, courts should be reluctant to infer a mechanism for disallowing default rates of interest under federal law. Rather, the allowability of the rate should turn instead on applicable nonbankruptcy law.

In addition, some courts have concluded that a default rate of interest may be denied as an unreasonable "charge," rather than as part of the creditor's allowable interest entitlement. In general, a default rate of interest is properly a form of interest. Recharacterization of the rate as a "charge" or a "penalty" should also turn in most instances on applicable nonbankruptcy law.

Courts have also allowed the compounding of interest—so-called "interest-on-interest"—if provided for in the underlying contract and under applicable nonbankruptcy law. Similarly, courts have allowed prepayment charges as a form of interest, as well as late charges that serve the function of additional interest. However, as with any other form of interest, these obligations should not be allowed to the extent that they are invalid under relevant nonbankruptcy law. Moreover, if an obligation denoted as a form of supplemental interest does not serve the function of providing additional interest and may be recharacterized as a "charge" under applicable nonbankruptcy law, it may be reviewed for reasonableness under federal law as a "charge" under applicable nonbankruptcy law, it may be reviewed for reasonableness under federal law as a "charge" under the last clause of section 506(b).

. . .

■—Effect on Junior Secured Creditor; Adequate Protection; Relief From Stay.

In general, a senior secured creditor is entitled to recover postpetition interest, fees, costs and charges even if the allowance of these expenses is to the detriment of a junior secured creditor (*e.g.,* by reducing the value of the junior creditor's interest).

4 *Collier on Bankruptcy,* ¶ 506.04[2][b][ii], [5] (15th ed rev.2005).

*Post–Default Interest at 18 Percent*

The promissory notes provide for post-default interest "at the rate of 18% per annum or the maximum rate permitted by applicable law, whichever is less (hereafter the 'Default Rate')." Promissory Note dated Nov. 26, 1996 for Loan No. 206582, para. 1(e).

■ In *Orix Credit Alliance, Inc. v. CIT Group/Equipment Financing, Inc. (In re Hughes)*,[5] this Court held that a creditor is entitled to postpetition interest if its claim is oversecured and the agreement provides for the interest. When a creditor is oversecured, the estate need not be solvent for the creditor to be entitled to postpetition interest. This Court held that the oversecured creditor was entitled to the 24 percent default rate of interest as provided in the agreement. 230 B.R. at 230.

■ The Court is persuaded that Respondent is entitled to the 18 per cent default rate of interest as provided in the promissory notes.

*Pre–Payment Premium*

The promissory notes provide for Movant to pay a prepayment premium if the obligations are paid before maturity. Respondent contends that Movant owes a prepayment premium of $135,675. This amount is 9.36 percent of the payment made to satisfy the outstanding principal balance of Respondent's claim, $1,450,000.

■ A prepayment premium is a "charge" and must be "reasonable" to be allowable under section 506(b). *In re AE Hotel Venture*, 321 B.R. 209, 217 (Bankr. N.D.Ill.2005); *Foothill Capital Corp. v. Official Unsecured Creditors' Committee of Midcom Communications, Inc.*, 246 B.R. 296, 306 (E.D.Mich.2000); *Continental Securities Corp. v. Shenandoah Nursing*

*Home Partnership*, 193 B.R. 769, 775 (W.D.Va.) *aff'd* 104 F.3d 359 (4th Cir.1996).

Some courts, in determining whether a prepayment premium is reasonable, limit the recovery to actual costs, charges, and fees incurred by the creditor because of the prepayment. Other courts allow the creditor to recover the difference between the market rate of interest on the prepayment date and the contract rate for the remaining term of the loan. Finally, some courts view a prepayment premium as liquidated damages. These courts consider whether the charge is so large as to be a penalty rather than damages. *Noonan v. Fremont Financial, (In re Lappin Electric Co.)*, 245 B.R. 326, 330 (Bankr. E.D.Wis.2000); *In re AE Hotel Venture*, 321 B.R. at 217 n. 10.

■ Respondent has the ultimate burden to show that the prepayment premium is reasonable. *In re Schwegmann Giant Super Markets*, 287 B.R. 649, 654 (E.D.La. 2002).

■ The promissory notes provide two methods to calculate the prepayment premium. Both methods require complex calculations which are difficult to perform. Respondent offers no evidence that the prepayment premium charged under either method is reasonable. The Court is not persuaded that Respondent has carried its burden of proof to show that it is entitled to the prepayment premium.

*Interest on Attorney Fees*

■ "This issue turns on whether the loan instruments authorize interest on attorney's fees under the circumstances of this case." *Equitable Life Assurance Society v. Sublett, (In re Sublett)* 895 F.2d 1381, 1387 (11th Cir.1990).

**5.** 230 B.R. 213 (Bankr.M.D.Ga.1998) (Laney, J.).

■ The promissory notes provide for Movant to pay reasonable attorney's fees, costs, and expenses incurred by Respondent if the obligations are referred to an attorney for collection. The promissory notes do not provide for interest on attorney fees. Respondent did not address this issue in its brief. The Court is not persuaded that Respondent is entitled to interest on its attorney fees.

An order in accordance with this memorandum opinion will be entered this date.