## In re CLIFTONDALE OAKS, LLC, Debtor.

## Cliftondale Oaks, LLC, Movant,

v.

## Silver Lake Enterprises, LLC, Respondent.

### No. 04–95161 WHD.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Jan. 6, 2006.

Gary A. Barnes, Gambrell & Stolz, LLP, Atlanta, GA, for Cliftondale Oaks, LLC, Debtor.

Leroy Culton, U.S. Trustee, Atlanta, GA, for Office of the U.S. Trustee, U.S. Trustee.

## ORDER

W. HOMER DRAKE, JR., Bankruptcy Judge.

Before the Court is the objection to the claim of Silver Lake Enterprises, LLC. (hereinafter "Silver Lake"), filed by Clif-

tondale Oaks, LLC (hereinafter the "Debtor"). This matter is a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. § 157(b)(2)(B); § 1334.

### FINDINGS OF FACT

1. The Debtor is a limited liability company, comprised of Empire Strategic Investments, LLC (hereinafter "Empire") and Ecufund, LLC. Empire has two members, Horizon Joint Venture Group, LLC (hereinafter "Horizon"), and Mary Tran. James Spencer is the principal individual member of Horizon and is also the managing director of Evergreen Strategic Investments of Florida, LLC, which is the managing director of Horizon.

2. On July 30, 2001, the Debtor executed a $1 million promissory note (hereinafter the "Note") with Branch Banking and Trust (hereinafter "BB & T"). The debt accrued variable interest calculated at BB & T's "prime" rate plus 1 percent. The Note is secured by a valid, perfected, first priority lien on real property of the Debtor (hereinafter the "Property").

3. As the Debtor's managing director, James Spencer executed the Note and all supporting documents on behalf of the Debtor. The Note was personally guaranteed by James Spencer and Mary Tran.

4. The Note contains a default interest provision that requires an additional 5% interest on any past due amounts and a late charge of 5% on any amounts overdue for more than 15 days. The default interest provision is subject to the caveat that no interest or fees shall be payable in excess of the amount allowed under applicable law.

5. Pursuant to the terms of the Note, the Debtor was to pay the full amount of the remaining debt by February 20, 2004. The Debtor defaulted on that obligation,

and, on March 25, 2004, BB & T sent the Debtor, Spencer, and Tran a notice of default and a demand for payment of $691,179.48, plus accrued interest of $9,215.73, late fees of $148.80, and accruing interest at the rate of $96 per day.

6. In May 2004, BB & T advertised the Property for a foreclosure sale to be held in June 2004.

7. On April 28, 2004, while BB & T's foreclosure advertisement was running, Silver Lake, which is a limited liability company formed by Tran's husband, purchased the Note and security agreements from BB & T. The Debtor learned of the purchase on May 15, 2004, when it contacted BB & T regarding the foreclosure.

8. In June 2004, the Debtor and Silver Lake entered into a forebearance agreement. The agreement provided that interest would begin to accrue at the default rate provided in the Note on June 1, 2004, and that the full loan balance would become due and payable on July 5, 2004. The agreement also entitled Silver Lake to advertise the Property for foreclosure on July 6, 2004.

9. The Debtor filed a voluntary petition under Chapter 11 of the Code on July 2, 2004.

10. The Debtor's confirmed Chapter 11 plan provides that Silver Lake shall be paid the full amount of its secured claim in cash. Silver Lake filed a secured proof of claim in the amount of $790,758.87.

11. During the pendency of the Debtor's Chapter 11 case, the Debtor sold the Property for $1.6 million. The principal amount of Silver Lake's secured claim was paid in full on August 24, 2005. There are sufficient funds in the Debtor's Chapter 11 estate to pay the remainder of the claim, including the default interest and late fees.

## CONCLUSIONS OF LAW

The Debtor has objected to Silver Lake's proof of claim and seeks disallowance of the portion of the claim that represents default interest and late charges. First, the Debtor argues that the default interest and late charges constitute an unreasonable penalty. Second, the Debtor asserts that the payment of default interest and late charges would be inequitable to the Debtor's other equity holders because the payment of these amounts would disproportionately benefit an insider, Tran, who the Debtor alleges acted unfairly by causing Silver Lake to purchase the Note from BB & T without notice to the Debtor.

Section 506 provides that a secured claim may include interest plus "reasonable fees, costs, or charges provided for under the agreement under which such claim arose." 11 U.S.C. § 506(b). The Debtor states that the vast majority of cases that have considered the issue have found that default interest rates are not reasonable and should be disallowed as an unenforceable penalty. The Debtor has cited no cases in support of this proposition, and a perusal of the case law calls this statement into question.

There appear to be two different approaches to determining whether post-petition default interest is allowable as part of the secured claim of an oversecured creditor. The first approach holds that default interest is allowable in bankruptcy, so long as it would be enforceable under state law. See In re K & J Properties, Inc., 338 B.R. 450, 458–59 (Bankr.D.Colo. 2005) (citing 4 Collier on Bankruptcy, ¶ 506.04[2][b] for the proposition that this approach is the majority approach); see also In re Holmes, 330 B.R. 317 (Bankr. M.D.Ga.2005) (holding that default interest is allowable so long as it is provided for by the contract). The second approach requires the bankruptcy court to review the

equities of the case to determine whether the default interest rate should be paid. *See id.* (citing *In re Hollstrom,* 133 B.R. 535 (Bankr.D.Colo.1991); *In re Wood Family Interests, Ltd.,* 135 B.R. 407 (Bankr.D.Colo.1989)).

The Fifth Circuit Court of Appeals has adopted the second approach. *See Matter of Southland Corp.,* 160 F.3d 1054, 1059–60 (5th Cir.1998). In *Southland,* the court stated that "[t]he cases find that a default interest rate is generally allowed, unless 'the higher rate would produce an inequitable ... result.'" *Id.; see also In re Laymon,* 958 F.2d 72 (5th Cir.1992) (default interest should be disallowed if its payment would create an inequitable or unconscionable result). The court also cited *In re Terry Ltd. Partnership,* 27 F.3d 241, 243 (7th Cir.1994), for the proposition that the cases decided after United States Supreme Court's holding in *Ron Pair*[1] suggest the existence of a "'presumption in favor of the [default] contract rate subject to rebuttal based upon equitable considerations.'" *Id.* at 1060. Under this approach, the party opposing the payment of the default interest has the burden of rebutting this presumption. *See id.* The equitable factors considered when determining whether the presumption has been rebutted may include whether the spread between the default and non-default interest rates is reasonable, whether junior creditors will be harmed by the payment of default interest, and whether the secured creditor seeking the default interest obstructed the debtor's attempts to propose and confirm a plan. *See id.* at 1060.

The Court need not choose one approach over the other. Under either approach, the Court finds that Silver Lake is entitled to the default interest rate specified in the Note. The Debtor has not argued that the default interest is not permissible under applicable non-bankruptcy law, and in fact, the Note contains a provision that limits the interest to no more than that allowed under applicable non-bankruptcy law. Therefore, Silver Lake would succeed under the first approach.

Under the second approach, the Court finds that the facts of this case would not render the payment of default interest inequitable or unconscionable. Because the Debtor's bankruptcy estate is solvent, no junior creditors would be impacted by honoring Silver Lake's contractual right to default interest. The Court has no evidence upon which to conclude that the spread between the interest rates or the total interest payable would be unreasonable or out of step with the market for this type of commercial loan. Additionally, the case law indicates that other courts have found the spread between these rates to be reasonable. *See In re Schaumburg Hotel Owner LP,* 97 B.R. 943 (Bankr.N.D.Ill. 1989) (4.3% spread reasonable); *In re Skyler Ridge,* 80 B.R. 500 (Bankr.C.D.Cal. 1987) (4% spread reasonable); *In re Liberty Warehouse Assocs. LP,* 220 B.R. 546 (Bankr.S.D.N.Y.1998) (8.8% spread reasonable); *In re Route One West Windsor LP,* 225 B.R. 76 (Bankr.D.N.J.1998) (8% spread reasonable). Disallowing Silver Lake's contractual right to default interest in this case would only serve to benefit the Debtor's equity holders, who are essentially the entities and individuals who agreed to the terms of the Note in the first instance. *See, e.g., In re Dixon,* 228 B.R. 166 (W.D.Va.1998) ("In the bankruptcy context, where the debtor is solvent and, therefore, the unsecured creditors would not be harmed by the imposition of a

---

**1.** *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

higher interest rate and the contest over default interest involves only a creditor and a stockholder/debtor, payment of the default rate of interest may be proper."); *In re 139–141 Owners Corp.*, 306 B.R. 763 (Bankr.S.D.N.Y.2004) (holding that a solvent debtor could not avoid its contractual obligation to pay default interest). For these reasons, the equities of this case do not favor disallowance.

■ Similarly, the Court finds that the fact that Tran's husband's company purchased the Note from BB & T, thereby saving the Property from foreclosure and extending the Debtor an additional month to pay the balance of the debt, is not a basis upon which the Court should disallow the interest and fees. If Silver Lake had not purchased the Note, the Debtor would have had to pay the default interest and fees to BB & T. The Court fails to see how the Debtor was damaged by Silver Lake's purchase of the Note, or why it would be inequitable to allow Silver Lake to benefit from its investment in purchasing the Note. The Debtor has not argued that state law would support the result it seeks, and has cited to no authority that would require the Court to disallow the claim. The Debtor has sufficient funds to pay all creditors, and, therefore, this is not an issue that will impact the Debtor's estate. The Court declines the Debtor's invitation to use the equitable powers granted by the Bankruptcy Code to alter Silver Lake's contractual right to receive default interest.

■ However, the late charge of 5% on "any amount overdue for more than 15 days" provided for in the Note is a "fee" or "charge" within the meaning of section 506(b) and allowance thereof is subject to a finding that the charge is "reasonable." *See In re Lejeune*, 73 B.R. 98 (Bankr. N.D.Ga.1987) (Drake, J.) (holding that section 506(b) allows oversecured creditor to receive contractual late charges on both pre and post-petition payments, so long as the charges are reasonable); *Mack Financial Corp. v. Ireson*, 789 F.2d 1083 (4th Cir.1986) (late penalty charges are permissible under section 506(b) so long as they are reasonable).

■ Most courts hold that, although a late fee of 5% on missed payments might otherwise be reasonable, assessment of such a charge would be unreasonable when coupled with default interest. *In re Consolidated Properties Partnership*, 152 B.R. 452, 458 (Bankr.D.Md.1993) (allowance of 5% on the entire principal balance, in addition to default rate interest not reasonable when payment would impact junior creditors); *In re 1095 Commonwealth Ave. Corp.*, 204 B.R. 284 (Bankr.D.Mass.1997) (denying request for late charge on top of default interest, notwithstanding the fact that the debtor was solvent); *In re Vest Assocs.*, 217 B.R. 696 (Bankr.S.D.N.Y. 1998) (refusing to allow default interest and late charges, even in the event the debtor turned out to be solvent); *In re AE Hotel Venture*, 321 B.R. 209 (Bankr. N.D.Ill.2005); *In re Route One West Windsor LP*, 225 B.R. 76 (Bankr.D.N.J. 1998) (secured creditor not entitled to default interest and late charges, notwithstanding the fact that the payment of the late charge would only impact the recovery of an "insider" creditor). In so holding, these courts reason that the late charge and the default interest rate are both intended to compensate the secured creditor for the increased administrative costs incurred upon the debtor's default, and, therefore, payment of both default interest and a late charge would represent a double recovery. *See Commonwealth*, 204 B.R. at 304–05.

The Court is persuaded by and adopts the reasoning of these cases. The additional 5% in default interest is sufficient to compensate Silver Lake for the adminis-

trative costs of the Debtor's default. Payment of the late charges, in conjunction with the default interest, would provide Silver Lake with a double recovery for these expenses. Therefore, the Court finds that allowing Silver Lake to collect a late charge and default interest would be unreasonable.

### CONCLUSION

For the reasons stated above, the Debtor's objection to the claim of Silver Lake Enterprises, LLC is **DENIED** in part and **SUSTAINED** in part. As the parties have agreed to calculate and stipulate to the appropriate amount of the claim based upon the Court's ruling, the parties shall submit a stipulated order with regard to the final amount of Silver Lake's claim within thirty (30) days of the entry of this Order.

**IT IS SO ORDERED.**